IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DAMARIUS THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-045 |
| | ) | |
| WARDEN JERMAINE WHITE; | ) | |
| DEPUTY WARDEN JACOB BEASLEY, | ) | |
| DEPUTY WARDEN OF SECURITY | ) | |
| VERONICA STEWART; | ) | |
| UNIT MANAGER KAREN THOMAS; | ) | |
| DEPUTY WARDEN TONJA KIETH | ) | |
| DR. DAVID CHANEY; NURSE | ) | |
| PRACTITIONER BEVERLY MURRAY | ) | |
| COUNSELOR PATRICIA WILCOX | ) | |
| DIRECTOR BRENDA SMITH, | ) | |
| REGISTERED NURSE ELIZIBETH | ) | |
| RYKARD; OFFICER BONITA JONES, | ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

Plaintiff, imprisoned at Telfair State Prison ("TSP") in Helena, Georgia, filed this case pursuant to 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

## I.    SCREENING THE COMPLAINT

Plaintiff names the following Defendants: (1) Warden Jermaine White, (2) Deputy Warden Jacob Beasley, (3) Deputy Warden of Security Veronica Stewart, (4) Unit Manager Karen Thomas, (5) Deputy Warden Tonja Kieth, (6) Dr. David Chaney (7) Nurse Practitioner Beverly Murray, (8) Counselor Patricia Wilcox, (9) Director Brenda Smith, (10) Registered Nurse Elizabeth Rykard, and (11) Officer Bonita Jones. (Doc. no. 1, pp. 1, 4.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On June 9, 2021, Plaintiff visited TSP's medical unit due to shortness of breath, weakness, and other issues. (Id. at 5.) Defendant Rykard examined Plaintiff. (Id.) Plaintiff's blood sugar level was "fatally high" at 330, and his blood pressure was 130/98. (Id.) LPN Thurman performed other bloodwork on Plaintiff. (Id.) On June 11, 2021, Plaintiff woke up from his sleep and began vomiting. (Id.) Plaintiff felt "as if [he] was going to die" so he was escorted back to the medical unit by Correctional Emergency Response Team ("CERT") Member Ryds. (Id.) Upon arrival, Nurse Yawn smelled ketones emitting from Plaintiff's skin. (Id.) Yawn suspected Plaintiff was a diabetic and contacted Defendant Chaney to have Plaintiff transferred to a hospital. (Id.)

Plaintiff was transported to Dodge County Hospital, where he was treated for ketoacidosis and a high A1C level of 12.5. (Id.) Plaintiff remained in the Intensive Care Unit ("ICU") for five days. (Id.) During Plaintiff's stay, Dr. Luoneda Barker supervised his care. (Id.) On June 16, 2021, Plaintiff returned to TSP, where he received two insulin shots a day and was placed on a diabetic diet. (Id.) The diet consisted of high carbohydrate and starch content that did not address Plaintiff's hyperglycemic diabetic needs. (Id. at 8.) Plaintiff made an unspecified number of attempts to notify Defendants Chaney, Murray, Rykard, Thurman, White, Kieth, and Smith of his dietary concerns, however no one made changes to Plaintiff's diet. (Id.)

On June 30, 2021, Plaintiff visited the medical unit to address his dietary concerns with Defendant Murray.  (Id.)  After his visit, Plaintiff attended lunchtime meal services.  (Id.)  Plaintiff got into a heated debate with Defendant Smith when he requested wheat bread instead of white bread to assist with his blood sugar stability.  (Id.)  During the debate, Plaintiff became outraged and threw his lunch tray into the trash can.  (Id.)  Defendant Stewart ordered Officer Kinsey and CERT Officer Gardner to take Plaintiff to cell 125 in Segregation Unit E-2.  (Id.)  Plaintiff remained in segregation for sixty-two days without a disciplinary report or segregation hearing. (Id.)  When Plaintiff inquired about his release from the segregation unit, an officer told him, "Deputy Warden Stewart has you in here until you learn how to deal with your diabetes better." (Id.)  During his time in the segregation unit, Plaintiff alleges the conditions were unsanitary and inhumane.  (Id.)  He was only afforded one phone call per month, one visit to the J-Pay kiosk per month, three showers per week, one visit to commissary per month and only five hours a week outside of his cell.  (Id.)  In general population, Plaintiff received daily phone and kiosk privileges, weekly store and shower privileges, and at least sixteen hours a day outside of his cell.  (Id.) Plaintiff states he suffered emotional strain and a back injury during his time in the segregation unit. (Id.)

In the early morning of July 2, 2021, Plaintiff's cell toilet erupted with urine, feces, and other human waste from other cells due to a "ping pong" plumbing issue.  (Id.)  Plaintiff's cell became flooded with waste.  (Id.)  At the time, Plaintiff was sleeping on the cell floor because he was assigned to a top bunk despite his bottom bunk profile.  (Id.)  Plaintiff notified Defendant Thomas of the flooding and his sanitation concerns in light of his daily finger pricks and insulin injections inside of his cell.  (Id.)  Plaintiff requested cleaning supplies and chemicals to sanitize

his cell. (Id. at 10.) Defendant Thomas responded, "What does that have to do with me?" and she refused to give Plaintiff or his cellmate supplies to sanitize the cell. (Id.)

Around 4:00 pm that evening, Tactical Unit Sergeant Moss dispatched maintenance to fix the flooding issue in the cell. (Id.) Plaintiff and his cellmate were taken to the J-Pay kiosk while maintenance attempted to repair the flooding issue. (Id.) After maintenance was unable to fix the issue, Plaintiff and his cellmate were forced to return to their soiled cell. (Id.) From July 2 to 5, 2021, Plaintiff and his cellmate were forced to eat, sleep, and take insulin injections inside of the dirty cell. (Id.) Defendant Thomas was aware of the conditions of the cell and still refused to give Plaintiff any supplies to sanitize his cell. (Id.) Since the toilet was inoperable, Plaintiff was forced to urinate and defecate in cups, trays, and bags and discard the waste through the same unsensitized tray flap through which he received food and medicine. (Id.) Plaintiff notified Defendants Thomas, Kieth, and Beasley of the sanitation issue, but no one took action to sanitize the cell or the tray flap. (Id.)

On July 3, 2021, prison staff denied Plaintiff his afternoon insulin injection because Defendant Thomas refused to escort LPN Thurman to Plaintiff's cell to administer the injection. (Id.) After Plaintiff missed his insulin injection, he fainted and became sick. (Id. at 11.) From June 30, 2021 to September 2, 2021, Plaintiff received limited opportunities to make commissary purchases. (Id.) Since Plaintiff had money in his inmate trust account, he was unable to receive indigent postage and was therefore unable to access the United States Postal Service. (Id.) Plaintiff notified Defendants White and Beasley of his difficulties making commissary purchases and mailing items, but no action was taken. (Id.)

On August 10, 2021, Defendant Wilcox refused to accept and process two grievances Plaintiff wrote addressing Americans with Disabilities Act ("ADA") violations. (Id.) On

December 24, 2021, Plaintiff was denied his afternoon insulin injection after Defendant Jones was unable to unlock a C-Pod lock securing a bolt on Plaintiff's cell.  (Id.)  Plaintiff had previously filed a grievance regarding the padlock policies, but the grievance was denied.  (Id.)

Plaintiff asks for punitive and compensatory damages in the amount of $90,000.  (Id. at 12.)  Plaintiff also seeks injunctive relief in the form of policy changes in the segregation units to allow inmates to make weekly commissary purchases, and the replacement of Counselor Patricia Wilcox with a new Grievance Coordinator.  (Id.)

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds Plaintiff has *arguably* stated a viable claim against Defendant Stewart in her individual capacity for ordering him to serve a sixty-two-day stint in administrative segregation without affording Plaintiff any due process. See, e.g. Kirby v. Siegelman, 195 F.3d 1285, 1291 (11th Cir. 1999) (outlining contours of prisoner due process claim related to deprivation that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.").  In a companion Report and Recommendation, the Court recommends **DISMISSAL** of all remaining claims and defendants, along with **DISMISSAL** of Plaintiff's official capacity claims for money damages against Defendant Stewart.

## II.   INSTRUCTIONS

**IT IS HEREBY ORDERED** that service of process shall be effected on Defendant Stewart.  The United States Marshal shall mail a copy of the complaint, (doc. no. 1), and this Order by first-class mail and request that Defendant waive formal service of the summons.  Fed. R. Civ. P. 4(d).  Individual defendants have a duty to avoid unnecessary costs of serving the summons, and if a defendant fails to comply with the request for waiver, the defendant must bear the costs of

personal service unless good cause can be shown for failure to return the waiver.  Fed. R. Civ. P. 4(d)(2).  A defendant whose return of the waiver is timely does not have to answer the complaint until sixty days after the date the Marshal mails the request for waiver.  Fed. R. Civ. P.  4(d)(3).  However, service must be effected within ninety days of the date of this Order, and the failure to do so may result in the dismissal of any unserved defendant or the entire case.  Fed. R. Civ. P. 4(m).  Plaintiff is responsible for providing sufficient information for the Marshal to identify and locate Defendant to effect service.

**IT IS FURTHER ORDERED** Plaintiff shall serve upon the defendant, or upon her defense attorney(s) if appearance has been entered by counsel, a copy of every further pleading or other document submitted to the Court.  Plaintiff shall include with the papers to be filed a certificate stating the date a true and correct copy of any document was mailed to the defendant or his counsel.  Fed. R. Civ. P. 5; Loc. R. 5.1.  Every pleading shall contain a caption setting forth the name of the court, the title of the action, and the file number.  Fed. R. Civ. P. 10(a).  Any paper received by a District Judge or Magistrate Judge that has not been properly filed with the Clerk of Court or that fails to include a caption or certificate of service will be returned.

It is Plaintiff's duty to cooperate fully in any discovery that may be initiated by the defendant.  Upon being given at least five days' notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath and solemn affirmation, any question that seeks information relevant to the subject matter of the pending action.  Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case.  The defendant shall ensure Plaintiff's deposition and any other depositions in the case are taken within the 140-day discovery period allowed by this Court's Local Rules.

While this action is pending, Plaintiff shall immediately inform this Court and opposing counsel of any change of address. Failure to do so will result in dismissal of this case.

Plaintiff must pursue this case; if Plaintiff does not press the case forward, the Court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Loc. R. 41.1. If Plaintiff wishes to obtain facts and information about the case from the defendant, Plaintiff must initiate discovery. See generally Fed. R. Civ. P. 26 through 37 (containing the rules governing discovery and providing for the basic methods of discovery). Plaintiff should begin discovery promptly and complete it within four months after the filing of the first answer of a defendant named in the complaint screened herein.

Interrogatories are a practical method of discovery for *pro se* litigants. See Fed. R. Civ. P. 33. Interrogatories shall not contain more than twenty-five questions. Id. Plaintiff must have the Court's permission to propound more than one set of interrogatories to a party. Discovery materials should not be filed routinely with the Clerk of the Court; exceptions include when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. If Plaintiff wishes to file a motion to compel pursuant to Fed. R. Civ. P. 37, he should first contact the attorney for the defendant and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Loc. R. 26.5.

Plaintiff must maintain a set of records for the case. If papers are lost and new copies are required, these may be obtained from the Clerk of the Court at the standard cost of fifty cents per page.

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Loc. R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that there is no opposition to the defendant's motion and grant the dismissal.

A response to a motion for summary judgment must be filed within twenty-one days after service of the motion. Loc. R. 7.5, 56.1. A failure to respond shall indicate that there is no opposition to the motion. Loc. R. 7.5. Furthermore, each material fact set forth in a defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should a defendant file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine issue as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should a defendant's motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the defendant's statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine issue for trial, the consequences are these: any factual assertions made in the defendant's affidavits will be accepted as true and summary judgment will be entered against Plaintiff pursuant to Fed. R. Civ. P. 56.

SO ORDERED this 26th day of August, 2022, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

8