IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |  |
|---|---|---|
| DAMARIUS THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-045 |
| | ) | |
| WARDEN JERMAINE WHITE; | ) | |
| DEPUTY WARDEN JACOB BEASLEY, | ) | |
| DEPUTY WARDEN OF SECURITY | ) | |
| VERONICA STEWART; | ) | |
| UNIT MANAGER KAREN THOMAS; | ) | |
| DEPUTY WARDEN TONJA KIETH; | ) | |
| DR. DAVID CHANEY; NURSE | ) | |
| PRACTITIONER BEVERLY MURRAY; | ) | |
| COUNSELOR PATRICIA WILCOX; | ) | |
| DIRECTOR BRENDA SMITH; | ) | |
| REGISTERED NURSE ELIZIBETH | ) | |
| RYKARD; OFFICER BONITA JONES, | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, imprisoned at Telfair State Prison ("TSP") in Helena, Georgia, filed this case pursuant to 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.      SCREENING THE COMPLAINT**

   **A.      BACKGROUND**

Plaintiff names the following Defendants: (1) Warden Jermaine White, (2) Deputy Warden Jacob Beasley, (3) Deputy Warden of Security Veronica Stewart, (4) Unit Manager Karen Thomas, (5) Deputy Warden Tonja Kieth, (6) Dr. David Chaney (7) Nurse Practitioner Beverly Murray, (8) Counselor Patricia Wilcox, (9) Director Brenda Smith, (10) Registered Nurse Elizibeth Rykard, and (11) Officer Bonita Jones.  (Doc. no. 1, pp. 1, 4.)  Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On June 9, 2021, Plaintiff visited TSP's medical unit due to shortness of breath, weakness, and other issues.  (Id. at 5.)  Defendant Rykard examined Plaintiff.  (Id.)  Plaintiff's blood sugar level was "fatally high" at 330, and his blood pressure was 130/98.  (Id.)  LPN Thurman performed other bloodwork on Plaintiff.  (Id.)  On June 11, 2021, Plaintiff woke up from his sleep and began vomiting.  (Id.)  Plaintiff felt "as if [he] was going to die" so he was escorted back to the medical unit by Correctional Emergency Response Team ("CERT") Member Ryds.  (Id.)  Upon arrival, Nurse Yawn smelled ketones emitting from Plaintiff's skin.  (Id.)  Yawn suspected Plaintiff was a diabetic and contacted Defendant Chaney to have Plaintiff transferred to a hospital.  (Id.)

Plaintiff was transported to Dodge County Hospital, where he was treated for ketoacidosis and a high A1C level of 12.5.  (Id.)  Plaintiff remained in the Intensive Care Unit ("ICU") for five days.  (Id.)  During Plaintiff's stay, Dr. Luoneda Barker supervised his care.  (Id.)  On June 16, 2021, Plaintiff returned to TSP, where he received two insulin shots a day and was placed on a diabetic diet.  (Id.)  The diet consisted of high carbohydrate and starch content that did not address Plaintiff's hyperglycemic diabetic needs.  (Id. at 8.)  Plaintiff made an unspecified number of

attempts to notify Defendants Chaney, Murray, Rykard, Thurman, White, Kieth, and Smith of his dietary concerns, however no one made changes to Plaintiff's diet. (Id.)

On June 30, 2021, Plaintiff visited the medical unit to address his dietary concerns with Defendant Murray. (Id.) After his visit, Plaintiff attended lunchtime meal services. (Id.) Plaintiff got into a heated debate with Defendant Smith when he requested wheat bread instead of white bread to assist with his blood sugar stability. (Id.) During the debate, Plaintiff became outraged and threw his lunch tray into the trash can. (Id.) Defendant Stewart ordered Officer Kinsey and CERT Officer Gardner to take Plaintiff to cell 125 in Segregation Unit E-2. (Id.) Plaintiff remained in segregation for sixty-two days without a disciplinary report or segregation hearing. (Id.) When Plaintiff inquired about his release from the segregation unit, an officer told him, "Deputy Warden Stewart has you in here until you learn how to deal with your diabetes better." (Id.) During his time in the segregation unit, Plaintiff alleges the conditions were unsanitary and inhumane. (Id.) He was only afforded one phone call per month, one visit to the J-Pay kiosk per month, three showers per week, one visit to commissary per month and only five hours a week outside of his cell. (Id.) In general population, Plaintiff received daily phone and kiosk privileges, weekly store and shower privileges, and at least sixteen hours a day outside of his cell. (Id.) Plaintiff states he suffered emotional strain and a back injury during his time in the segregation unit. (Id.)

In the early morning of July 2, 2021, Plaintiff's cell toilet erupted with urine, feces, and other human waste from other cells due to a "ping pong" plumbing issue. (Id.) Plaintiff's cell became flooded with waste. (Id.) At the time, Plaintiff was sleeping on the cell floor because he was assigned to a top bunk despite his bottom bunk profile. (Id.) Plaintiff notified Defendant Thomas of the flooding and his sanitation concerns in light of his daily finger pricks and insulin

3

injections inside of his cell. (Id.) Plaintiff requested cleaning supplies and chemicals to sanitize his cell. (Id. at 10.) Defendant Thomas responded, "What does that have to do with me?" and she refused to give Plaintiff or his cellmate supplies to sanitize the cell. (Id.)

Around 4:00 pm that evening, Tactical Unit Sergeant Moss dispatched maintenance to fix the flooding issue in the cell. (Id.) Plaintiff and his cellmate were taken to the J-Pay kiosk while maintenance attempted to repair the flooding issue. (Id.) After maintenance was unable to fix the issue, Plaintiff and his cellmate were forced to return to their soiled cell. (Id.) From July 2 to 5, 2021, Plaintiff and his cellmate were forced to eat, sleep, and take insulin injections inside of the dirty cell. (Id.) Defendant Thomas was aware of the conditions of the cell and still refused to give Plaintiff any supplies to sanitize his cell. (Id.) Since the toilet was inoperable, Plaintiff was forced to urinate and defecate in cups, trays, and bags and discard the waste through the same unsensitized tray flap through which he received food and medicine. (Id.) Plaintiff notified Defendants Thomas, Kieth, and Beasley of the sanitation issue, but no one took action to sanitize the cell or the tray flap. (Id.)

On July 3, 2021, prison staff denied Plaintiff his afternoon insulin injection because Defendant Thomas refused to escort LPN Thurman to Plaintiff's cell to administer the injection. (Id.) After Plaintiff missed his insulin injection, he fainted and became sick. (Id. at 11.) From June 30, 2021 to September 2, 2021, Plaintiff received limited opportunities to make commissary purchases. (Id.) Since Plaintiff had money in his inmate trust account, he was unable to receive indigent postage and was therefore unable to access the United States Postal Service. (Id.) Plaintiff notified Defendants White and Beasley of his difficulties making commissary purchases and mailing items, but no action was taken. (Id.)

On August 10, 2021, Defendant Wilcox refused to accept and process two grievances Plaintiff wrote addressing Americans with Disabilities Act ("ADA") violations. (Id.) On December 24, 2021, Plaintiff was denied his afternoon insulin injection after Defendant Jones was unable to unlock a C-Pod lock securing a bolt on Plaintiff's cell. (Id.) Plaintiff had previously filed a grievance regarding the padlock policies, but the grievance was denied. (Id.) Plaintiff asks for punitive and compensatory damages in the amount of $90,000. (Id. at 12.) Plaintiff also seeks injunctive relief in the form of policy changes in the segregation units to allow inmates to make weekly commissary purchases, and the replacement of Counselor Patricia Wilcox with a new Grievance Coordinator. (Id.)

**B.    DISCUSSION**

    **1.    Legal Standard for Screening**

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915€(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915€(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

5

defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff fails to State a Supervisory Liability Claim Against Defendants White, Beasley, and Kieth

The Eleventh Circuit has held a district court properly dismisses a defendant where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendant with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.")

Throughout Plaintiff's complaint, Plaintiff names Defendants White, Beasley and Kieth as recipients of Plaintiff's various grievances regarding prison conditions and alleged constitutional violations. (Doc. no. 1, pp. 8, 11.) Plaintiff has failed to show that any of these defendants "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).

At best, Plaintiff alleges the supervisory defendants received Plaintiff's grievances and failed to answer or take action in response, but such allegations do not establish direct involvement by these defendants. See Asad v. Crosby, 158 F. App'x 166, 170-72 (11th Cir. 2005) (per curiam) (affirming district court's dismissal of supervisory liability claims against two defendants who failed, inter alia, "to afford [plaintiff] relief during the grievance process," because the record failed to show that they "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation"); see also Blackerby v. McNeil, No. CV 307-071, 2008 U.S. Dist. LEXIS 38751, 2008 WL 2047814, at *1-2 (S.D. Ga. May 13, 2008) (dismissing claim against prison official who allegedly failed to act in accordance with the plaintiff's wishes concerning information in a grievance and a letter); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory officials who denied administrative grievances and otherwise failed to act based on allegations contained in the grievances), cert. denied, 530 U.S. 1264 (2000); Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions).

Therefore, Plaintiff must allege a causal connection between these defendants and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff fails to allege facts sufficient to support the necessary causal connection. Plaintiff has not alleged (1) a history of widespread abuse, (2) an improper custom or policy put in place by Defendants White, Beasley, or Kieth, or (3) an inference these defendants directed prison employees to act, or knew they would act, unlawfully. At best, Plaintiff has alleged he used the grievance procedure or somehow notified the supervisory defendants of a problem, and his grievance and complaints were either denied or not investigated to his satisfaction. Because a prison grievance procedure does not provide a constitutionally protected interest, Bingham v. Thomas, 654 F.3d 1171, 1177-78 (11th Cir. 2011) (per curiam),

8

supervisory liability cannot be imposed based on a grievance denial.

Supervisory defendants cannot be held liable merely in light of their supervisory positions. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013). Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of respondeat superior. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employers who provided medical care for state inmates could not be sued under § 1983 on respondeat superior theory). "Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Plaintiff has failed to allege facts that establish these three defendants were present for, or participated in, a constitutional violation.

In sum, Plaintiff has not shown that Defendants White, Beasley, and Kieth actually participated in any alleged constitutional violation; nor has he drawn the necessary causal connection to any alleged constitutional violation. Therefore, Plaintiff fails to state a claim upon which relief can be granted against them.

> 3. **Plaintiff Fails to State a Deliberate Indifference Claim Against Defendants Jones, Thomas, Rykard, Chaney, Murray, and Smith**

To state a claim for deliberate indifference to serious medical needs, Plaintiff must allege: (1) he had a serious medical need—the objective component, (2) a defendant acted with deliberate indifference to that need—the subjective component, and (3) his injury was caused by a

defendant's wrongful conduct. Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (per curiam). To satisfy the objective component regarding a serious medical need, a prisoner must allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). To satisfy the subjective component that a defendant was deliberately indifferent to his serious medical need, Plaintiff must allege that person: (1) was subjectively aware of a serious risk to Plaintiff's health, and (2) disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Melton, 841 F.3d at 1223.

In addition, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). The Eighth Amendment does not mandate that the medical care provided to the prisoner be "perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999); Harris, 941 F.2d at 1505; see also Palazon v. Sec'y for Dep't of Corr., 361 F. App'x 88, 89 (11th Cir. 2010) (*per curiam*) (requiring more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law" to establish deliberate indifference claim). Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986).

Plaintiff has made several allegations related to his diabetic condition. (See generally doc. no. 1.) Before Plaintiff was formally diagnosed with diabetes at Dodge County Hospital, Defendant Rykard checked Plaintiff's blood sugar and blood pressure when Plaintiff visited the medical unit for "shortness of breath" and feelings of "weakness" among other unspecified issues. (Id. at 5.) After Defendant Rykard's examination, an LPN performed other blood tests upon Plaintiff. (Id.) Defendant Murray then sent Plaintiff back to his unit. (Id.) When Plaintiff began vomiting several days later, Defendant Chaney authorized Plaintiff's transfer to Dodge County Hospital to receive advanced medical care. (Id.)

Taking Plaintiff's allegations as true, it does not appear that Defendants Rykard, Murray, and Chaney rendered constitutionally inadequate medical treatment. In fact, both Defendants Rykard and Chaney acted deliberately to ensure Plaintiff received adequate care by performing the necessary medical tests and authorizing Plaintiff's transfer to Dodge County Hospital once his medical needs extended beyond the capability of TSP's medical unit.

Plaintiff further alleges he notified these defendants that his special diabetic diet was insufficient due to high starch and carbohydrate content. (Id.) However, as previously established, Plaintiff's allegations that a defendant received a letter or grievance from Plaintiff does not establish that the defendant was directly involved in the challenged condition. Asad, 158 F. App'x at 166, 170-72. Even assuming Plaintiff's diet was a serious medical need and Defendants Rykard, Murray, Chaney, and Smith were responsible for Plaintiff receiving an appropriate diet, Plaintiff alleges, at most, a mere difference of opinion as to the proper course of treatment. Although Plaintiff claims the diet he received was inadequate based on his medical needs, his own complaint exhibits show Plaintiff's medical needs were considered and, to the extent he would allow, accommodated by changes to his diet. (See doc. no. 11, p. 7.) Additionally, before Plaintiff's

11

altercation with Defendant Smith in the cafeteria, Defendant Murray met with Plaintiff to further discuss his medical concerns. (Id.)

Plaintiff also alleges two missed insulin injections during his stay in segregation. (Id. at 10-12.) On July 3, 2021, Plaintiff alleges the nurse could not administer his insulin because Defendant Thomas "refused to escort [the nurse] into [Plaintiff's cell]." (Id.) On December 24, 2021, Plaintiff missed another insulin injection because Defendant Jones was unable to open a padlock on Plaintiff's cell. (Id. at 10-11.) However, the exhibits Plaintiff uses to supplement his complaint show that his glucose test result on December 25, 2021, was similar to the results of other dates where he had not missed an insulin shot. (See generally doc. no. 11, p. 11.) Both incidents were isolated, Plaintiff reports no physical injury, and Plaintiff fails to state a claim of deliberate indifference as a result of the two missed injections.

In absence of any alleged facts that Defendants Jones, Thomas, Rykard, Murray, Chaney, or Smith acted with deliberate indifference to Plaintiff's needs as a diabetic inmate, or that Defendant suffered an injury from any alleged indifference to those needs, Plaintiff has failed to state a claim.

### 4. Plaintiff Fails to State a Claim Against Defendant Wilcox Under the ADA

Although Plaintiff alleges Defendant Wilcox refused to accept or process two of Plaintiff's ADA grievances, Defendant Wilcox was not outside of her authority to do so if the grievances did not conform to the Administrative Grievance Procedures at TSP. As the grievance coordinator at TSP, Defendant Wilcox has a duty to "[screen] [a] grievance to determine whether to accept it for processing or recommend the Warden reject it." See G.D.C. Statewide Grievance Procedure 227.02 § IV(C)(1)(e)(i). In exhibits provided by Plaintiff as a supplement to his complaint, it

appears Plaintiff filed an "ADA Grievance" on August 4, 2021, after he was denied an insulin injection on July 3, 2021. (Doc. no. 11, p. 17.) On September 8, 2021, Plaintiff was notified via a Central Office Appeal Response that his ADA Grievance "[did] not qualify as an ADA grievance or Emergency grievance" and that Plaintiff "failed to follow policy guidelines" by filing the grievance more than 10 days after the incident. (Id. at 18.)

Plaintiff filed "Emergency Grievance" No. 328019 on August 15, 2021, regarding Defendant Wilcox's refusal to process his ADA grievances. (Id. at 14.) Plaintiff received a Rejected Grievance Response from the Warden informing Plaintiff that Grievance No. 328019 was rejected because Plaintiff's grievance contained more than one issue/incident. (Id. at 13.) On October 18, 2021, Plaintiff received a Central Office Appeal response confirming Plaintiff failed to follow proper procedure by grieving more than one issue in his grievance. (Id. at 15.)

Given the chain of Plaintiff's grievances and the responses he received from the Warden and the Central Appeals Office, it appears that Defendant Wilcox was within her authority to reject Plaintiff's ADA grievances, either because they were not ADA or Emergency grievances, or they failed to comply with the requirements set forth by the Administrative Grievance Procedure at TSP. (See generally doc. no. 11.) At most, rejection of the grievances would constitute negligence and not deliberate indifference.

Further, prisoners do not have a constitutionally protected liberty interest in a prison's inmate grievance procedure. See Thomas v. Warner, 237 F. App'x 435, 438 (11th Cir. 2007). Consequently, "Plaintiff's allegations that prison officials failed to comply with the prison's voluntary grievance procedures does not state a due process claim." Bo Reese v. Emmons, No. CV 316-087, 2017 U.S. Dist. LEXIS 66131, at *4-5 (S.D. Ga. Mar. 30, 2017). For these reasons, Plaintiff has failed to state a claim against Defendant Wilcox.

### 5. Official Capacity Monetary Damages

Plaintiff is suing Defendants in their individual and official capacities. (Doc. no. 1.) However, the Eleventh Amendment bars official capacity claims against state prison officials for money damages. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Therefore, Plaintiff's official capacity claims against all Defendants for monetary relief fail as a matter of law and should be dismissed.

### C. Plaintiff's Motions for Injunctive Relief Should Be Denied

Plaintiff alleges Defendant Stewart sprayed him with OC spray in retaliation for his filing of grievances, and he seeks an order that (1) requires prison officials to provide him with weekly access to the commissary for the duration of his stay in administrative segregation; (2) prohibits Defendant Stewart from coming near him or engaging in any further acts of retaliation; and (3) prohibits any prison staff from interfering with his prosecution of this lawsuit including any action to remove any of his legal papers. (Docs. no. 4, 8.) A party moving for injunctive relief must show the following: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be averse to the public interest." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (citing All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." All Care Nursing Serv., Inc., 887 F.2d at 1537 (citing United States v. Jefferson Cnty., 720 F.2d 1511, 1519 (11th Cir. 1983)).

Plaintiff has not met his burden of persuasion as to all four of these requirements. First,

the Court is recommending dismissal of all claims except one. While Plaintiff has pled facts sufficient to survive screening of this one due process claim, he has only barely done so and certainly has not shown a substantial likelihood of success on the merits. Second, the Court will not issue sweeping edicts to TSP because it is well-settled that federal courts should refrain from unwarranted interference in the day-to-day operations of prisons. See Bell v. Wolfish, 441 U.S. 520, 547 (1979). Lastly, the order Plaintiff seeks would serve little purpose, as it would amount to nothing more than an instruction to "obey the law"—a duty already in place. See Burton v. City of Belle Glade, 178 F.3d 1175, 1201 (11th Cir. 1999) (refusing to issue order which would amount to broad instruction to simply "obey the law").

## II.   CONCLUSION

For the reasons set forth above, Plaintiff fails to state a claim upon which relief can be granted against Defendants White, Beasley, Thomas, Kieth, Chaney, Murray, Wilcox, Smith, Rykard, and Jones. Therefore, the Court **REPORTS** and **RECOMMENDS** these Defendants, along with Plaintiff's official capacity claims for money damages against all Defendants, be dismissed from the case. The Court further **RECOMMENDS** Plaintiff's motions for Preliminary Injunction, (doc. nos. 4-1, 8-1), and Temporary Restraining Order, (doc. nos. 4-2, 8-2), be **DENIED**. By separate Order, the Court allows Plaintiff to proceed with his due process claim against Defendant Stewart.

SO REPORTED and RECOMMENDED this 26th day of August, 2022, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA