IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| DAMARIUS THOMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 322-045 |
| ) | |
| WARDEN JERMAINE WHITE; ) | |
| TELFAIR STATE PRISON; ) | |
| DEPUTY WARDEN OF SECURITY ) | |
| VERONICA STEWART; ) | |
| UNIT MANAGER KAREN THOMAS; ) | |
| DEPUTY WARDEN TONJA KIETH; ) | |
| COUNSELOR PATRICIA WILCOX; ) | |
| OFFICER BONITA JONES; DR. ) | |
| DAVID CHANEY; UNIT MANAGER ) | |
| MISTY WINTERS; NURSE ) | |
| PRACTITIONER BEVERLY MURRAY; ) | |
| DEPUTY WARDEN JACOB BEASLEY; ) | |
| KITCHEN SERVICES DIRECTOR ) | |
| BRENDA SMITH; RN ELIZIBETH ) | |
| RYKARD; and GEORGIA DEPARTMENT ) | |
| OF CORRECTIONS, ) | |
| ) | |
| Defendants. ) | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, imprisoned at Telfair State Prison in Helena, Georgia, filed this case pursuant to 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

I.      SCREENING THE AMENDED COMPLAINT

A.      BACKGROUND

In his amended complaint, Plaintiff names the following Defendants: (1) Warden Jermaine White, (2) Telfair State Prison ("TSP"), (3) Deputy Warden of Security Veronica Stewart, (4) Unit Manager Karen Thomas, (5) Deputy Warden Tonja Kieth, (6) Counselor Patricia Wilcox, (7) Officer Bonita Jones, (8) Dr. David Chaney, (9) Unit Manager Misty Winters, (10) Nurse Practitioner Beverly Murray, (11) Deputy Warden of Security Jacob Beasley, and (12) Georgia Department of Corrections ("GDC"). (Doc. no. 23, pp. 3, 12-13.) Named in the initial complaint but not the amended complaint were (1) Kitchen Services Director Brenda Smith and (2) RN Elizibeth Rykard. (Compare doc. no. 1 with doc. no. 23.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On June 9, 2021, Plaintiff visited TSP's medical unit complaining of shortness of breath, fatigue, and lack of appetite. (Id. at 13.) Plaintiff's blood sugar level was 303 and his blood pressure was 130/98. (Id.) LPN Thurman performed additional bloodwork on Plaintiff, and Defendants Chaney, Murray, and Nurse Rykard sent him back to his dorm. (Id.)

On June 11, 2021, Plaintiff woke up from his sleep and began vomiting. (Id.) Plaintiff felt "as if [he] was going to die" so he was escorted back to the medical unit by Correctional Emergency Response Team ("CERT") Member Ryds. (Id.) Upon arrival, Nurse Yawn smelled ketones emitting from Plaintiff's skin and conducted a urinalysis. (Id.) His urine had high amounts of blood and ketones. (Id.) Yawn immediately notified Defendant Chaney because she suspected Plaintiff was a diabetic and requested he be transferred to a hospital. (Id.) At the hospital, he was flushed with liquids and doctors told him that he was insulin dependent. (Id.)

On June 30, 2021, Plaintiff was placed in segregation until September 2, 2021. (Id.) He was never given an incident report. (Id. at 15.) Defendants White and Stewart failed to give Plaintiff a formal hearing within 96 hours of the initial administrative segregation assignment by Defendant Stewart. (Id.) He was only allowed to shower three times per week, go outside a maximum of five hours per week, and make one phone call per month. (Id.) Plaintiff was also housed on the top bunk despite having a bottom bunk profile. (Id. at 17-18.) At an unknown point, he fell off the top bunk and injured his back. (Id.)

Plaintiff has received limited opportunities to make commissary purchases. (Id. at 17.) Furthermore, since Plaintiff had money in his inmate trust account, he was unable to receive indigent postage and was therefore unable to access the United States Postal Service. (Id.) Plaintiff claims this policy was implemented by Defendants Beasley and White. (Id.) While in general population, Plaintiff received daily phone and kiosk privileges, weekly store, and shower privileges, and at least sixteen hours per day of time outside of his cell. (Id. at 20-21.)

In the early morning of July 2, 2021, Plaintiff's cell toilet erupted with urine, feces, and other human waste due to a "ping pong" plumbing issue. (Id. at 15.) Plaintiff's cell became flooded with the waste. (Id.) Plaintiff notified Defendant Thomas of the flooding and his sanitation concerns in light of his daily finger pricks and insulin injections. (Id.) Plaintiff requested cleaning supplies and chemicals to sanitize. (Id.) Defendant Thomas responded, "that has nothing to do with me" and she refused to give Plaintiff or his cellmate supplies to sanitize. (Id.) Defendant Thomas also refused to alert maintenance until Sergeant Moss notified them. (Id. at 16.) Plaintiff and his cellmate were taken to the J-Pay kiosk while maintenance attempted to repair the flooding issues. (Id.) After maintenance was unable to fix the issue, Plaintiff and his cellmate were forced to return to their soiled cell. (Id.) From July 2 to 6, 2021, Plaintiff and his cellmate were forced

3

to eat, sleep, and take insulin injections inside of the dirty cell. (Id.) Defendant Thomas was aware of the conditions of the cell and still refused to give Plaintiff any supplies to sanitize his cell. (Id.)

On July 3, 2021, prison staff denied Plaintiff his afternoon insulin injection because Defendant Thomas refused to escort LPN Thurman to Plaintiff's cell to administer the injection. (Id.) After Plaintiff missed his insulin injection, he fainted. (Id.) On December 2, 2021, Defendant Jones did not have the correct key for Plaintiff's cell, so he could not receive his afternoon insulin injections. (Id.) He fainted that night too. (Id.) Plaintiff claims housing was secured by a padlock, which was a policy instituted by Defendants White and Beasley. (Id. at 17-18.)

Plaintiff attempted to file two unspecified grievances with Defendant Wilcox, but he would not accept them. (Id. at 18.) Plaintiff notified Defendant Kieth, who is Defendant Wilcox's supervisor, and she failed to correct this violation. (Id.)

On May 4, 2022, Defendant Stewart pepper sprayed Plaintiff in the eyes three times for five seconds each. (Id. at 19.) Sergeant Brown also sprayed him once for good measure. (Id.) Plaintiff was left lying in pain and unable to see or breathe. (Id.) He was not taken to medical until a day later. (Id.)

Between May 3 and July 22, 2022, Plaintiff was again placed in segregation without receiving a disciplinary report or hearing. (Id.) Plaintiff was given an appeal, but "denied for no reason." (Id.) Defendants Thomas and White knew about these due process violations but failed to stop them. (Id.) During the same time period, Plaintiff's cell did not have an electrical outlet for his medically prescribed CPAP machine. (Id. at 20.) Plaintiff notified Defendant Winters, and nothing was done, so Plaintiff was forced to sleep without his machine or try to plug it in in the hallway outlet. (Id.) Plaintiff claims that TSP and GDC are also responsible for this. (Id.) For

the above-mentioned allegations, Plaintiff seeks compensatory and punitive damages. (Id. at 14-17.)

    **B.**    **DISCUSSION**

        **1.**    **Legal Standard for Screening**

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915€(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915€(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550

U.S. at 555, 557). In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff fails to State a Supervisory Liability Claim Against Defendants White, Beasley, Winters, and Kieth

Supervisory defendants cannot be held liable merely in light of their supervisory positions. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013). Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of respondeat superior. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employers who provided medical care for state inmates could not be sued under § 1983 on respondeat superior theory). "Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Plaintiff has failed to allege facts that establish these three defendants were present for, or participated in, a constitutional violation.

The Eleventh Circuit has held a district court properly dismisses a defendant where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendant with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.").

Throughout Plaintiff's amended complaint, Plaintiff names Defendants White, Beasley, Winters, and Kieth as recipients of Plaintiff's various grievances regarding prison conditions and alleged constitutional violations. (Doc. no. 23, pp. 14-20.) However, Plaintiff has failed to show that any of these defendants "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).

At best, Plaintiff alleges the supervisory defendants received Plaintiff's grievances and failed to answer or act in response, but such allegations do not establish direct involvement by these defendants. See Asad v. Crosby, 158 F. App'x 166, 170-72 (11th Cir. 2005) (per curiam) (affirming district court's dismissal of supervisory liability claims against two defendants who failed, inter alia, "to afford [plaintiff] relief during the grievance process," because the record failed to show that they "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation"); see also Blackerby v. McNeil, No. CV 307-071, 2008 U.S. Dist. LEXIS 38751, 2008 WL 2047814, at *1-2 (S.D. Ga. May 13, 2008) (dismissing claim against prison official who allegedly failed to act in accordance with the plaintiff's wishes concerning

information in a grievance and a letter); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory officials who denied administrative grievances and otherwise failed to act based on allegations contained in the grievances), cert. denied, 530 U.S. 1264 (2000); Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions).

Therefore, Plaintiff must allege a causal connection between these defendants and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff fails to allege facts sufficient to support the necessary causal connection.

8

Plaintiff has not alleged (1) a history of widespread abuse, (2) an improper custom or policy put in place by Defendants Winters, White, Beasley, or Kieth, or (3) an inference these defendants directed prison employees to act, or knew they would act, unlawfully. At best, Plaintiff has alleged he used the grievance procedure or somehow notified the supervisory defendants of problems, and his grievance and complaints were either denied or not investigated to his satisfaction. Because a prison grievance procedure does not provide a constitutionally protected interest, supervisory liability cannot be imposed based on a grievance denial. Bingham v. Thomas, 654 F.3d 1171, 1177-78 (11th Cir. 2011) (*per curiam*).

In sum, Plaintiff has not shown that Defendants Winters, White, Beasley, and Kieth participated in any alleged constitutional violation; nor has he drawn the necessary causal connection to any alleged constitutional violation. Therefore, Plaintiff fails to state a claim upon which relief can be granted against them.

### 3. Plaintiff Fails to State a Deliberate Indifference Claim Against Defendants Jones, Thomas, Chaney, and Murray

To state a claim for deliberate indifference to serious medical needs, Plaintiff must allege: (1) he had a serious medical need—the objective component, (2) a defendant acted with deliberate indifference to that need—the subjective component, and (3) his injury was caused by a defendant's wrongful conduct. Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (per curiam). To satisfy the objective component regarding a serious medical need, a prisoner must allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). To satisfy the subjective component that a

defendant was deliberately indifferent to his serious medical need, Plaintiff must allege that person: (1) was subjectively aware of a serious risk to Plaintiff's health, and (2) disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Melton, 841 F.3d at 1223.

In addition, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). The Eighth Amendment does not mandate that the medical care provided to the prisoner be "perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999); Harris, 941 F.2d at 1505; see also Palazon v. Sec'y for Dep't of Corr., 361 F. App'x 88, 89 (11th Cir. 2010) (*per curiam*) (requiring more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law" to establish deliberate indifference claim). Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986).

Plaintiff has made several allegations related to his diabetic condition. (See generally doc. no. 23.) Before Plaintiff was formally diagnosed with diabetes at Dodge County Hospital, Rykard checked Plaintiff's blood sugar and blood pressure when Plaintiff visited the medical unit for "shortness of breath" and feelings of "weakness" among other unspecified issues. (Id. at 5.) After Rykard's examination, an LPN performed other blood tests upon Plaintiff. (Id.) Defendant Murray then sent Plaintiff back to his unit. (Id.) When Plaintiff began vomiting several days later,

10

Defendant Chaney authorized Plaintiff's transfer to Dodge County Hospital to receive advanced medical care. (Id.)

Taking Plaintiff's allegations as true, it does not appear that Defendants Murray and Chaney rendered constitutionally inadequate medical treatment. In fact, both Defendants acted deliberately to ensure Plaintiff received adequate care by performing the necessary medical tests and authorizing Plaintiff's transfer to Dodge County Hospital once his medical needs extended beyond the capability of TSP's medical unit. (Id. at 13.) Plaintiff also alleges two missed insulin injections during his stay in segregation. (Id.) On July 3, 2021, Plaintiff alleges the nurse could not administer his insulin because Defendant Thomas "refused to escort [the nurse] into [Plaintiff's cell]." (Id.) On December 24, 2021, Plaintiff missed another insulin injection because Defendant Jones was unable to open a padlock on Plaintiff's cell. (Id. at 17.) Both incidents were isolated, Plaintiff reports no physical injury, Plaintiff does not allege that Defendant Thomas knew the purpose of the nurse's visit, and Plaintiff fails to state a claim of deliberate indifference as a result of the two missed injections.

In absence of any alleged facts that Defendants Jones, Thomas, Murray, or Chaney acted with deliberate indifference to Plaintiff's needs as a diabetic inmate, or that Defendant suffered an injury from any alleged indifference to those needs, Plaintiff has failed to state a claim.

### 4. Plaintiff Fails to State a Claim Against Defendant Wilcox Under the ADA

Plaintiff alleges Defendant Wilcox refused to accept or process two of his ADA grievances, but he provides no additional details concerning the nature of his grievances and the reasons Defendant Wilcox rejected them rather than accepting them for processing. There is no basis, therefore, to know whether the rejections were wrongful in any way. Furthermore, prisoners do

11

not have a constitutionally protected liberty interest in a prison's inmate grievance procedure. See Thomas v. Warner, 237 F. App'x 435, 438 (11th Cir. 2007). Consequently, "Plaintiff's allegations that prison officials failed to comply with the prison's voluntary grievance procedures does not state a due process claim." Bo Reese v. Emmons, No. CV 316-087, 2017 U.S. Dist. LEXIS 66131, at *4-5 (S.D. Ga. Mar. 30, 2017). For these reasons, Plaintiff has failed to state a claim against Defendant Wilcox.

### 5. Plaintiff Fails to State a Claim Against Defendants Smith and Rykard

As the Court previously explained, (doc. no. 20), Plaintiff's amended complaint supersedes and replaces in its entirety the previous complaint filed by Plaintiff. See Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016). Plaintiff does not name Defendants Smith or Rykard, two of the Defendants from the original complaint, in the caption of the amended complaint. (Cf. doc. no. 1 with doc. no. 23.) Plaintiff mentions these two Defendants in passing and does not connect either with a purported constitutional violation. Dismissal is therefore appropriate. See West v. Atkins, 487 U.S. 42, 48 (1988) (requiring in § 1983 case allegation of violation of right secured by Constitution or laws of United States by person acting under color of state law); Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."). Accordingly, Defendants Rykard and Smith should be dismissed.

### 6. TSP and GDC Are Not Subject to Liability in a § 1983 Suit

TSP and GDC are not proper parties because jails and prisons are not legal entities subject to liability in § 1983 claims. See Jamelson v. Unnamed Defendant, No. CV 617-103,

2017 WL 6503630, at *2 (S.D. Ga. Dec. 19, 2017) (holding "Georgia State Prison . . . is not a separate legal entity capable of being sued"), *adopted by* 2018 WL 616142 (S.D. Ga. Jan. 29, 2018); Parks v. Georgia, No. CV 517-047, 2017 WL 2930832, at *3 (S.D. Ga. July 10, 2017) (holding "penal institutions . . . are generally not considered legal entities subject to suit"); see also Brannon v. Thomas Cty. Jail, 280 F. App'x. 930, 934 n.1 (11th Cir. 2008) (noting Thomas County Jail is not entity capable of being sued under Georgia law). Appropriate parties for suit under § 1983 included "persons" who participated in the alleged violation. See 42 U.S.C. § 1983 (subjecting only "persons" to liability); Ga. Insurers Insolvency Pool v. Elbert Cty., 368 S.E.2d 500, 502 (Ga. 1988) (limiting § 1983 liability to "(1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue") (quotations omitted). Accordingly, Plaintiff's claims against Defendants TSP and GDC should be dismissed without prejudice.

### 7. Official Capacity Monetary Damages

Plaintiff is suing Defendants White, Kieth, Wilcox, and Beasley in their official capacities. (Doc. no. 23.) However, the Eleventh Amendment bars official capacity claims against state prison officials for money damages. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Therefore, Plaintiff's official capacity claims against these Defendants for monetary relief fail as a matter of law and should be dismissed.

### C. Plaintiff's Motions for Injunctive Relief Should Be Denied

Plaintiff alleges Defendant Stewart sprayed him with OC spray in retaliation for his filing of grievances, and he seeks an order that (1) requires prison officials to provide him with weekly access to the commissary for the duration of his stay in administrative segregation; (2) prohibits Defendant Stewart from coming near him or engaging in any further acts of retaliation; and (3)

prohibits any prison staff from interfering with his prosecution of this lawsuit including any action to remove any of his legal papers. (Docs. no. 4, 8.)

A party moving for injunctive relief must show the following: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be averse to the public interest." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (citing All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." All Care Nursing Serv., Inc., 887 F.2d at 1537 (citing United States v. Jefferson Cnty., 720 F.2d 1511, 1519 (11th Cir. 1983)).

Plaintiff has not met his burden of persuasion as to all four of these requirements. First, the Court is recommending dismissal of all claims except one. While Plaintiff has pled facts sufficient to survive screening of this one due process claim, he has only barely done so and certainly has not shown a substantial likelihood of success on the merits. Second, the Court will not issue sweeping edicts to TSP because it is well-settled that federal courts should refrain from unwarranted interference in the day-to-day operations of prisons. See Bell v. Wolfish, 441 U.S. 520, 547 (1979). Lastly, the order Plaintiff seeks would serve little purpose, as it would amount to nothing more than an instruction to "obey the law"—a duty already in place. See Burton v. City of Belle Glade, 178 F.3d 1175, 1201 (11th Cir. 1999) (refusing to issue order which would amount to broad instruction to simply "obey the law").

## II.   CONCLUSION

For the reasons set forth above, Plaintiff fails to state a claim upon which relief can be

granted against Defendants White, Winters, TSP, Beasley, Thomas, Kieth, Chaney, Murray, Wilcox, Smith, Rykard, Jones, and GDC. Therefore, the Court **REPORTS** and **RECOMMENDS** these Defendants be dismissed from the case. The Court further **RECOMMENDS** Plaintiff's motions for Preliminary Injunction, (doc. nos. 4-1, 8-1), and Temporary Restraining Order, (doc. nos. 4-2, 8-2), be **DENIED**. By separate Order, the Court allows Plaintiff to proceed with his excessive force and due process claims against Defendant Stewart.

SO REPORTED and RECOMMENDED this 31st day of October, 2022, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA