IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DAMARIUS THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-045 |
| | ) | |
| VERONICA STEWART, | ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, incarcerated at Valdosta State Prison in Valdosta, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.SC. § 1983 concerning events alleged to have occurred at Telfair State Prison ("TSP") in Helena, Georgia. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendant's motion for summary judgment be **GRANTED**, (doc. no. 42), a final judgment be entered in favor of Defendant, and this civil action be **CLOSED**.

## I. PROCEDURAL BACKGROUND

Plaintiff initially named fourteen Defendants in his amended complaint, and because he is proceeding IFP, the Court screened the amended complaint and directed service of process on Defendant Stewart. (See doc. nos. 23-26.) The Court allowed Plaintiff to proceed on his due process claim concerning Tier I administrative segregation placement and excessive use of force claim against Defendant Stewart. (Doc. nos. 24-26, 29.)

On December 27, 2022, Defendant filed a motion to dismiss, arguing Plaintiff failed

to exhaust his administrative remedies by not filing grievances prior to filing his amended complaint as to the excessive use of force claim. (See doc. no. 30.) On February 17, 2023, the Court granted the motion to dismiss as to the excessive use of force claim and ordered Defendant to file her answer as to the due process claim. (Doc. nos. 34-36.) On February 22, 2023, Defendant filed her answer, and the Clerk of Court issued a scheduling notice. (Doc. nos. 37-38.) On August 8, 2023, Defendant filed a motion for summary judgment, arguing Plaintiff received full and proper procedure for his Tier I placement, thus, Plaintiff's due process claim should be dismissed. (Doc. no. 42.)

When Defendant filed her motion for summary judgment, the Clerk issued a notice concerning the summary judgment motion and the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of failing to comply with the requirements for responding. (See doc. no. 43.) When Plaintiff initially failed to respond and changed addresses, the Court again explained the rights and requirements associated with responding and extended Plaintiff's time to respond to Defendant's motion. (Doc. nos. 44-48.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*), are satisfied.[1] On November 3, 2023, Plaintiff filed an unsworn response labeled as "Affidavit of Fact in Dispute of Assertions in Defendant's Declaration," in which he enumerates thirteen disputed points. (Doc. no. 49.) Plaintiff's response, however, does not respond to each fact in Defendant Stewart's Statement of Material Facts and consists of unsworn, conclusory allegations, most of which are inadmissible evidence for purposes of opposing the motion for summary judgment. See

[1] The Court also explained summary judgment motions, along with the rights and requirements associated with responding, in its August 26, 2022 Order. (Doc. no. 13, pp. 7-8.)

Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005) (requiring consideration of only admissible evidence when ruling on motions for summary judgment); see also Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (finding summary judgment appropriate where inmate produced nothing beyond "his own conclusory allegations" challenging actions of defendant); Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."). Regardless, the Court will consider, where appropriate, Plaintiff's response.

In accordance with Local Rule 56.1, Defendant submitted a Statement of Material Facts ("SMF") in support of her summary judgment motion. (Doc. no. 42-2.) Because Plaintiff did not file a proper responsive statement, the Court deems admitted all portions of Defendant's statement having evidentiary support in, and not otherwise contradicted by the record, and which are not properly opposed by Plaintiff as contemplated under Federal Rule of Civil Procedure 56. See Fed. R. Civ. P. 56 (requiring citations to particular parts of materials in record, and affidavits or declarations used to oppose summary judgment motion made on personal knowledge, set out facts admissible in evidence, and show competency to testify); Scoggins v. Arrow Trucking Co., 92 F.Supp.2d 1372, 1373 n.1 (S.D. Ga. 2000); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (finding no error in deeming defendants' statements of material fact admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objection to statement).

Regardless, this does not automatically entitle Defendant Stewart to summary judgment because as the movant, she continues to "shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact." Reese v. Herbert, 527

F.3d 1253, 1268 (11th Cir. 2008); see also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009). Thus, the Court will review the record and any factually supported opposition to the SMF, "to determine if there is, indeed, no genuine issue of material fact." Mann, 588 F.3d at 1303.

## II. FACTUAL BACKGROUND

The events giving rise to this lawsuit occurred when Plaintiff was housed in Tier I Administrative Segregation at TSP during the period of June 30, 2021, to September 2, 2021. (Doc. no. 23 pp. 5, 14-15.)[2] At that time, Defendant Stewart was the Deputy Warden of Security at TSP. (Doc. no. 42-4, "Stewart Decl.")

### A. Events Giving Rise to Suit

Plaintiff alleges the following facts in his amended complaint signed on October 8, 2022. (Doc. no. 23, p. 11.) On June 30, 2021, several days after being treated for ketoacidosis and a high A1C level of 12.5, Plaintiff visited the medical unit to address his dietary concerns with Nurse Murray. (Id. at 5, 8.) After his visit, Plaintiff attended lunchtime meal services. (Id. at 8.) Plaintiff got into a heated debate with Kitchens Services Director Smith when he requested wheat bread instead of white bread to assist with his blood sugar stability. (Id.) During the debate, Plaintiff became outraged and threw his lunch tray into the trash can. (Id.) Defendant Stewart ordered Officer Kinsey and CERT Officer Gardner to take Plaintiff to cell 125 in Segregation Unit E-2. (Id.) Plaintiff remained in

[2] Notably, Plaintiff's amended complaint only asserts a due process claim as to his placement in administrative segregation from "June 30, 2021 - Sept. 2, 2021." (Doc. no. 23, p. 5.) In Defendant's motion for summary judgment, Defendant addresses Plaintiff's June 2021-September 2021 and May 2022-July 2022 stints in administrative segregation. (Doc. no. 42, p. 3.) However, the first stint was the only claim discussed in Plaintiff's amended complaint, (see doc. no. 23), and allowed to proceed, (see doc. no. 29), thus, the Court will only address such claim.

segregation for approximately sixty-two days without a disciplinary report or segregation hearing. (Id.)

When Plaintiff inquired about his release from the segregation unit, an officer told him, "Deputy Warden Stewart has you in here until you learn how to deal with your diabetes better." (Id.) During his time in the segregation unit, Plaintiff alleges the conditions were unsanitary and inhumane. (Id.) He was only afforded one phone call per month, one visit to the J-Pay kiosk per month, three showers per week, one visit to commissary per month, and only five hours a week outside of his cell. (Id.) In general population, Plaintiff received daily phone and kiosk privileges, weekly store and shower privileges, and at least sixteen hours a day outside of his cell. (Id.) Plaintiff states he suffered emotional strain and a back injury during his time in the segregation unit. (Id.)

**B. Undisputed Tier I Procedural Facts**

On June 30, 2021, at 2:20 P.M., Defendant Stewart recommended Plaintiff be involuntarily assigned to the Tier I Program because Plaintiff "refused housing, incited a riot, was insubordinate, verbally threatening, and had laid on the ground during pill call." (Stewart Decl., ¶ 8.) Indeed, Plaintiff admits he became outraged and threw his lunch tray into the trash can after a mealtime dispute. (Doc. no. 23, p. 8.) On June 30, 2021, Defendant completed and signed a Segregation: Tier I Program Assignment Memo documenting her reasons for placing Plaintiff into the Tier I Program. (Stewart Decl., ¶ 8; doc. no 42-6, p. 1.) Plaintiff was moved from his general population dorm to Tier I - Building E2, cell 125. (Stewart Decl., ¶ 8.)

On July 2, 2021, the TSP Classification Committee held a 96-Hour Segregation Hearing as required by SOP 209.07 and recorded their findings on a 96-Hour Segregation

Committee Hearing Form. (Stewart Decl., ¶ 9; doc. no. 42-6, p. 2.) The July 2, 2021 96-Hour Segregation Hearing Form reflects Plaintiff was placed in Administrative Segregation on June 30, 2021, at 2:20 P.M., for "refusing housing, inciting a riot, insubordination, being verbally threatening and laying on the ground during pill call." (Id.) The Classification Committee determined that Plaintiff would remain in the Tier I Program. (Id.) Importantly, Defendant was not a member of the TSP Classification Committee on July 2, 2021. (Stewart Decl., ¶ 9.) The 96-Hour Segregation Hearing Form notes that Plaintiff was present during the hearing and had "no comment" regarding the allegations against him. (Stewart Decl., ¶ 9; doc. no. 42-6, 2.)

On July 30, 2021, the TSP Classification Committee conducted a thirty-day review of Plaintiff's placement into the Tier I Program and recorded their findings on a Segregation 30-Day Review Memo. (Stewart Decl., ¶ 10; doc. no. 42-6, p. 3.) The Classification Committee determined Plaintiff would remain in the Tier I Program and Defendant Stewart signed the memo as the Warden's designee agreeing with the decision of the Classification Committee. (Id.) On July 30, 2021, Plaintiff signed the July 30, 2021 Segregation-30 Day Review Memo and acknowledged receipt. (Id.)

On August 30, 2021, the TSP Classification Committee again conducted a 30-Day Review of Plaintiff's placement into the Tier I Program and recorded their findings on a Segregation 30-Day Review Memo. (Stewart Decl., ¶ 11; doc. no. 42-6, p. 4.) The Classification Committee determined Plaintiff would remain in the Tier I Program, and Defendant signed the Segregation 30-Day Review Memo as the Warden's designee agreeing with the decision. (Id.) On August 30, 2021, Plaintiff signed the August 30, 2021 Segregation 30-Day Review Memo and acknowledged receipt. (Id.) On September 1, 2021,

Plaintiff was transferred out of the Tier I Program and back to general population in Dormitory C-2. (Stewart Decl., ¶ 12; doc. no. 42-6, pp. 5-9.)

Inmates assigned to the Tier I Program have, at a minimum, a number of privileges, which include but are not limited to the following: (1) the opportunity for personal hygiene, which includes showering and shaving, three times per week (2) food in the same quality and quantity as that provided to inmates in general population (3) five hours of exercise per week, with a least one hour per day on five days, and the exercise shall be outside the cells unless security or safety concerns dictate otherwise (4) possession of all of the inmate's personal property contingent upon the security needs of the unit (5) visitation and correspondence privileges as those afforded to inmates in general population, unless such visitation is not feasible and (6) the ability to order up to $60.00 worth of items from the commissar, unless those items are determined to be a threat to the security of the Tier I Program Unit. (Stewart Decl., ¶ 7; SOP 209.07, § VI, ¶ E.)

**C. Plaintiff's Version of the Facts**

In Plaintiff's unsworn "Affidavit of Fact in Dispute of Assertions in Defendants Declaration," Plaintiff had no idea he was "charged" or "accused" of verbal threats, insubordination, or laying down at pill call. (Doc. no. 49, p. 4.) Plaintiff never had or knew of a 96-Hour Segregation Hearing and was never served with a copy of the assignment memo. (Id. at 3-4.) Plaintiff was not present during the July 2, 30, or August 30, 2021, hearings. (Id. at 4.) Plaintiff never signed the July 2, 30, or August 30, 2021, assignment memoranda and his signatures on these documents were forged. (Id.)

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is

to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**B. Defendant Stewart is Entitled to Summary Judgment**

**1. Legal Framework for Procedural Due Process**

Section 1983 claims for denial of procedural due process requires three elements: "(1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process." Quintanilla v. Bryson, 730 F. App'x 738, 743 (11th Cir. 2018) (quoting Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003).

A liberty interest protected by the Fourteenth Amendment may arise from the Due Process Clause itself, or state law may create a liberty interest. See Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Al-Amin v. Donald, 165 F. App'x 733, 738 (11th Cir. 2006). Although "prisoners do not shed all constitutional rights at the prison gate, . . . lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying or penal system." Id. at 485, 115 S. Ct. at 2301 (citations, quotation marks, and alteration omitted). The Eleventh Circuit has held that the due process clause "does not directly protect an inmate from changes in the conditions of his confinement" or create a constitutionally-protected interest "in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters." Chandler v. Baird, 926 F.2d 1057, 1060 (11th Cir. 1991) (quoting Hewitt v. Helms, 459 U.S. 460, 466 (1983).

Procedural due process calls for "such procedural protections as the particular situation demands." Gilbert v. Homar, 520 U.S. 924, 930 (1997). The fundamental

requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. Mathews v. Eldridge, 424 U.S. 319, 334 (1976). A prisoner must "receive some notice of the charges against him and an opportunity to present his views," whether at a hearing or in writing. Hewitt, 459 U.S. at 476. A procedural due process violation is not complete unless and until the state fails to provide process. McKinney v. Pate, 20 F. 3d 1550, 1557 (11th Cir. 1994).

**2. Administrative Segregation Procedures for Tier I Segregation**

The procedure for involuntary assignments to administrative segregation is covered by Standard Operating Procedures ("SOP") 209.06-209.09, Administrative Segregation.[3] The Tier I Administrative Segregation Program ("Tier I Program") is an offender management program established by the Georgia Department of Corrections to manage inmates, including those that "pose a threat to the safety and secure operation of the institution." (Stewart Decl., ¶ 3; doc. no. 42-5, hereinafter "SOP 209.07.") The Tier I Program is not punitive in nature. (See generally id.) The rules, policies, and procedures of the Tier I Program are set forth in GDC SOP 209.07. (Stewart Decl., ¶ 3; SOP 209.07.)

Inmates do not have to receive a Disciplinary Report in order to be placed in the Tier I Program. (Stewart Decl., ¶ 4; SOP 209.07, p. 1.) If a Warden or the Warden's designee assigns an inmate to the Tier I program against the wishes of the inmate (otherwise known as an "Involuntary Assignment"), the Warden or the Warden's designee shall ensure that the prison Classification Committee holds a formal hearing within ninety-six hours after the inmate is placed into the Tier I Program. (Stewart Decl., ¶ 4; SOP 209.07, § VI, ¶ B.) An inmate may appeal his assignment to the Tier I Program by submitting written objections to the Warden on

[3] A list of all GDC SOPs can be found at https://gdc.georgia.gov/organization/about-gdc/agency activity/policies-and-procedures/facilities-division-policies.

an SOP IIB09-0003 (via attachment 3) form within three business days of his receipt of the notice. (Stewart Decl., ¶ 5; SOP 209.07, § VI, ¶ D.) The Warden will then complete the review of the inmate's appeal within ten business days of the receipt of the appeal. (Id.) The prison's Classification Committee shall conduct a thirty-day review of all inmates assigned to the Tier I Program. (Stewart Decl., ¶ 6; SOP 209.07, § VI, ¶ H.) The Classification Committee shall consider the original reason(s) for placement into the Tier I Program and review the inmate's disciplinary file to determine if the inmate shall remain in the Tier I program, return to General Population, or be assigned to the Tier II Program. (Stewart Decl., ¶ 6; SOP 209.07, § VI, ¶ D.)

**3. Plaintiff Received Constitutionally Adequate Process**

For Plaintiff to succeed on a Due Process claim under Section 1983, Plaintiff must show three elements: "(1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process." Quintanilla, 730 F. App'x 738, 743. Even assuming satisfaction of the first two elements, the undisputed facts show Plaintiff's claim fails to satisfy the third element because he received constitutionally adequate process for his placement in Tier I segregation.

In his amended complaint, Plaintiff asserts he remained in Tier I segregation for approximately sixty two days without a disciplinary report or segregation hearing. (Doc. no. 23, p. 8.) However, Plaintiff does not have to receive a disciplinary report for Tier I segregation and he does not point to any policy that requires such. (See Stewart Decl., ¶ 4; SOP 209.07, p. 1.) Plaintiff is also not entitled to a generalized "segregation hearing," instead, Tier I segregation requires that the prison Classification Committee holds a formal hearing within ninety-six hours after the inmate is placed into the Tier I Program. (See Stewart Decl., ¶ 4; SOP 209.07, § VI, ¶ B.) On June 30, 2021, Plaintiff was placed in the Tier I Program and on

July 2, 2021, the Classification Committee held the required 96-Hour Segregation Hearing. (Stewart Decl., ¶ 9; SOP 209.07, § VI, ¶ B; doc. no. 42-6, p. 2.) The Classification Committee found Plaintiff should stay in Tier I segregation, noting the same reasons as Defendant Stewart's initial report. (Stewart Decl., ¶ 9; doc. no. 42-6, pp. 1-2.)

Defendant provides documentation that Plaintiff was present at the hearing, had "no comment," and signed the assignment memo, (see doc. nos. 42-2, 42-4, 42-6), however, Plaintiff blanketly asserts he did not know of the hearing and never signed nor received a copy of the assignment memo, (doc. no. 49, pp. 3-4). Plaintiff also contends that he had no idea of any subsequent reviews, nor did he sign or receive the reports. (Id.) Plaintiff provides no evidence to support this assertion in his improper and unsworn response to Defendant's motion for summary judgment. (Id.)

Such allegations are insufficient to create an issue of material fact in light of the Defendant's evidence. Indeed, Defendant has provided ample evidence that blatantly contradicts Plaintiff's conclusory assertions, such as all reports and memoranda relating to Plaintiff's Tier I placement from July to September 2021. (See generally doc. no. 42); see also Feliciano v. City of Miami Beach, 707 F.3d 1244, 1253 (11th Cir. 2013) ("As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature."); Traylor v. Danforth, No. 6:19-CV-068, 2022 WL 604184, *6 (S.D. Ga. Feb. 1, 2022) *adopted by* 2022 WL 599310 (S.D. Ga. Feb. 28, 2022) ("Plaintiff says in his sworn Complaint he was placed in Tier II "without any disciplinary actions or sanctions" . . . [h]owever, Defendants have provided evidence which blatantly contradicts this allegation,

such as Plaintiff's previous disciplinary reports which were the basis for his placement on Tier II when he was transferred to. GSP.")

It is clear from the record that Plaintiff was notified of his recommendation for the Tier I placement, had a 96-Hour Segregation Hearing with the opportunity to present any thoughts on such assignment, had "no comment," and received the assignment form. (See generally doc. no. 42); see also Quintanilla, 730 F. App'x at 744 (stating a prisoner must initially "receive some notice of the charges against him and an opportunity to present his views, whether at a hearing or in writing"). Even if Plaintiff did not attend the hearing or present his thoughts in person, he could have presented his views in writing, which he chose not to do. (Stewart Decl., ¶ 5; SOP 209.07, § VI, ¶ D); Quintanilla, 730 F. App'x at 744. Plaintiff also did not appeal the assignment. (See generally doc. nos. 23, 49.) Moreover, Defendant's evidence shows Plaintiff had the required subsequent reviews of his Tier I placement and was also provided with those memoranda. (See generally doc. no. 42; SOP 209.07, § VI, ¶¶ D-H); see also Hale v. Sec'y for Dep't of Corr., 345 F. App'x 489, 493 (11th Cir. 2009) (noting prisoners in administrative segregation must receive periodic review of their confinement). Plaintiff was released back into general population on September 1, 2021. (Stewart Decl., ¶ 12; doc. no. 42-6, pp. 5-9.)

In sum, Plaintiff's initial and later periodic reviews of his sixty-two days in Tier I Segregation were constitutionally sufficient. See Nolley v. Warden, Macon State Prison, 820 F. App'x. 845, 856-57 (11th Cir. 2020) (affirming summary judgment and noting GDC SOP compliance with due process requirements of informing of charges, written notice, and opportunity to present evidence); see also Traylor, 2022 WL 604184 at *6 (holding notification of Classification Committee's recommendation and opportunity to appeal satisfied due process

standards of Quintanilla and Hewitt). Accordingly, summary judgment for Defendant is proper.

### C. Qualified Immunity

The Court need not address Defendant's qualified immunity argument because Defendant is entitled to summary judgment on the merits of Plaintiff's due process claim. Martinez v. Burns, 459 F. App'x 849, 851 n.2 (11th Cir. 2012) (*per curiam*).

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion for summary judgment be **GRANTED**, (doc. no. 42), a final judgment be entered in favor of Defendant, and this civil action be **CLOSED**.

SO REPORTED and RECOMENEDED this 4th day of January, 2024, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA